*734 OPINION.
Black :
In addition to the facts set forth in our findings, petitioner has requested that the Board specifically make three findings as follows:
*735 19. The taxpayer disposed of Ms Coca-Cola International stock upon a sale or exchange thereof, as such term is used in section 112 (a) of the Revenue Act of 1934.
20. There was no distribution of assets in partial liquidation by Coca-Cola International Corporation, as that term is used in section 115 (i) of the Revenue Act of 1934.
21. The exchange of International stock for Coca-Cola stock land the immediate delivery of the latter to close out the short sale constituted a single transaction resulting in a sale or exchange of International stock.
To state these three requested findings is, likewise, to state the three points of petitioner’s argument. They are the same. For reasons which we shall presently state, we are unable to make the three special findings requested by petitioner.
Prior to and during each of the taxable years 1934 and 1935 petitioner made certain short sales of both common and class A stocks of Coca-Cola. At the outset it should be noted that these short sales were of Coca-Cola stocks and not of International stocks. For income tax purposes, a short sale is not deemed to be consummated until delivery of property to cover the short sale. See article 117-6 of respondent’s Regulations 86, set out in the margin.[1] How did petitioner cover his short sales of Coca-Cola stocks ? He took some International stocks that he owned and delivered them, not to the short sale purchasers, but to International, and, in accordance with the irrevocable resolutions of the board of directors and stockholders of International dated February 9,1926, February 13,1926, and February 5,1929, International delivered to petitioner for his International stocks twice the number of shares of Coca-Cola stocks, which latter stocks (with the exception of 45 shares of Coca-Cola common received by petitioner on the exchange of 135 shares of International common on April 17, 1935) petitioner delivered to the short sale purchasers to close out his short position. The shares of International which petitioner delivered to International were, in accordance with the resolutions just referred to, permanently retired by International, The fair market value of the shares of Coca-Cola stocks thus received by petitioner for his Internationa] stocks represented “amounts dis *736 tributed in partial liquidation” of International as that term is used in section 115 (c) and defined in section 115 (i) of the Revenue Act of 1934.[2] L. B. Coley, 45 B. T. A. 405; Gus T. Dodd, 46 B. T. A. 7; Estate of Emanuel Ulman, 46 B. T. A. 517. Cf. Diamond Alkali Co. v. Driscoll, 125 Fed. (2d) 1005.
Petitioner emphasizes the fact that it has been stipulated that petitioner exchanged his International stocks with International for twice the number of shares of Coca-Cola stocks “for the purpose of using the latter stocks to close out his short position” and that the exchange and covering occurred on the same date. He contends that because of this fact the delivery of International stocks to International for Coca-Cola stocks should not be treated as a separate transaction, but that in substance there was only one transaction, namely, a sale of International stocks for cash. In support of this contention petitioner cites and relies upon the same line of cases[3] that the peti tioners in the Dodd and TJVman proceedings relied upon. In those cases we held that the exchange of International stock with International for Coca-Cola stock was one of the material facts in those cases and that it could not be disregarded. To disregard the exchange would be to treat it as if it did not occur when in fact the International stocks were turned in to International and by it retired, the petitioner receiving in place of his International stocks twice the number of shares of Coca-Cola stocks. We think such a turning in of International stocks to International for Coca-Cola stocks and a retirement of such International stocks in accordance with the resolutions above mentioned plainly amounts to a distribution in partial liquidation of International. If we were to hold otherwise, there never would be a distribution in partial liquidation of International with respect to the International stocks so turned in, for such stocks were, under the resolutions, to be permanently retired. Certainly there could never be a distribution in partial liquidation of International as far as the purchasers of the short *737 sales were concerned, for they never had International stocks delivered to them, but received that which they purchased, namely, Coca-Cola stocks. We hold, therefore, as we held in the Dodd and Ulman cases, that the exchange of International stocks with International for Coca-Cola stocks can not be disregarded and that there resulted a distribution to petitioner of Coca-Cola stocks in partial liquidation of International. Section 115 (c), supra, provides how amounts distributed in partial liquidation of a corporation shall be treated. Under this section, which we regard as mandatory, we think the respondent was correct in determining that 100 percent of the gains of $197,428.78 and $150,617.55 for the years 1934 and 1935, respectively, should be taken into account in computing net income.
On the same day that petitioner received the Coca-Cola stocks in partial liquidation of International, he used all of such stocks (with the exception of the 45 shares of Coca-Cola common above mentioned) to close out his short position. The respondent determined that on this second transaction petitioner sustained losses of $70,944.71 and $72,020.82, for 1934 and 1935, respectively. The respondent has allowed 100 percent of these losses to be taken into account in computing net income under section 117 of the Revenue Act of 1934, the material provisions of which are as follows:
(a) General Rule. — In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:
100 per centum if the capital asset has been held for not more than 1 year;
* * # * * # *
(d) Limitation on Capital Losses. — Losses from sales or exchanges of capital assets shall be allowed only* to the extent of $2,000 plus the gains from such sales or exchanges. * * *
(e) Gains and Losses ebom Short Sales, Etc. — For the purpose of this title—
(1) gains or losses from short sales of property shall be considered as gains or losses from sales or exchanges of capital assets; * * *.
The net results of the two transactions, therefore, are gains of $126,484.07 and $78,596.73 for 1934 and 1935, respectively, 100 percent of which the respondent has taken into account in computing petitioner’s net income. We hold that the respondent has arrived at the correct tax consequences and that his determination should be approved. Gus T. Dodd, supra; Estate of Emanuel Ulman, supra. Inasmuch as the other adjustments made by the. Commissioner in the deficiency notice are not contested,
Decision.will entered for the respondent.

Art. 417 — 6. Gains and losses from short sales. — For income tax purposes, a short sale is not deemed to be consummated until delivery of property to cover the short sale, and the percentage of the recognized gain or loss to be taken into account under section 117 (a) from a short sale shall be computed according to the period for which the property so delivered was held. Thus, if a taxpayer made a short sale of shares of stock and covered the short sale by purchasing and delivering shares which he held for not more than one year, 100 per cent of the recognized gain or loss would be taken into account under section 117 (a), even though he had on hand other shares of the same stock which he held for more than one year. If, however, he covered the short sale by delivering shares which he held for more than one year but not for more than two years, only 80 per cent of the recognized gain or loss would be taken into account. If the short sale is made through a broker and the broker borrows property to make delivery, the short sale is not deemed to be consummated until the obligation of the seller created by the short sale is finally discharged by delivery .of property to .the broker to replace the property borrowed by the broker.

 SEC. 115. DISTRIBUTIONS BX CORPORATIONS.
*******
(e) Distributions in Liquidation. — Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income. * * *
* * * * * * *
(i) Definition of Partial Liquidation. — As used in this section the term “amounts distributed in partial liquidation” means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

 See footnote 2 in Estate of Emanuel Ulmans supra.